No. 33,681

W. J. MYERS, *Appellant,* v. E. D. ISERN and THE RAILROAD BUILDING, LOAN AND SAVINGS ASSOCIATION, *Appellees.*

(75 P. 2d 253)

Opinion filed January 29, 1938.

*R. C. Russell,* of Great Bend, and *Hal Alderman,* of Lyons, for the appellant.

*William Osmond, Elrick C. Cole, T. B. Kelley,* all of Great Bend, and *E. S. Hampton,* of Salina, for appellee E. D. Isern; *C. O. Conkey,* of Newton, and *Wayne H. Lamoreux,* of Great Bend, for appellee Railroad Building, Loan and Savings Association.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover $2,500 as the alleged value of thirty shares of installment stock in a building and loan association which were canceled when the mortgage loan to which the stock was incidental was paid off.

The pertinent facts must be stated at some length. Early in January, 1926, plaintiff Myers owned a house and a parcel of ground in Lyons. About that time (the dates in the abstract are confusing) he borrowed $2,500 from the Railroad Building, Loan and Savings Association, of Newton; and in accordance with the usual formalities for procuring a loan of money from that sort of institution he was required to subscribe for thirty shares of installment stock, and to execute a promissory note for the desired amount, and to execute a mortgage on his Lyons property to secure its payment.

The installment stock, designated "Series G," was never formally issued, but an entry was made in the books of the loan association that the shares stood in his name. At their inception these shares had no actual value, but they had a potentially growing value as contemplated monthly installments should be paid. These installments were so computed that if 120 of them were regularly and timely paid the thirty shares of stock would attain their ultimate par value at the same time the mortgage indebtedness would fall due, and by appropriate book entries the stock would then be canceled and the mortgage indebtedness thereby satisfied.

For some two years plaintiff Myers paid the monthly installments on his loan, but in the meantime he had gotten into debt to defendant Isern in the sum of $2,313.33. On May 11, 1928, apparently to secure or satisfy that indebtedness, Myers executed a deed conveying the Lyons property to Isern, and about the same time they made a written contract which may be summarized thus:

Myers was to continue to pay the dues, interest and installments on the mortgage indebtedness according to the instruments pertaining thereto. He also agreed to pay the taxes, and keep the property

insured and in good repair. Isern agreed that at any time within five years he would reconvey the property to Myers upon receipt of the $2,313.33 with six percent interest. It was also agreed that if Myers breached the contract in any particular Isern would be entitled to immediate possession—from which provision it can be inferred that possession of the property was not delivered to Isern when he received the deed thereto.

Sometime after this transaction and agreement Myers became delinquent in his payments to the loan company, thus breaching his contract with Isern of May, 1928. The last payment by Myers occurred in November, 1930.

On September 17, 1932, Meyers and Isern entered into another written contract, in which Isern was recognized as the owner of the property subject to the loan association mortgage, and Isern agreed to lease the premises to Myers for four years at $35 per month payable in advance. The agreement stated that Myers was in possession at that time and that he could continue to enjoy possession so long as he complied with its terms. It was also agreed that Isern would convey the property to Myers, subject to the mortgage, at any time within four years if Myers should pay him $2,400— apparently a return of the consideration Isern had given for Myers' equity in the property. It was further agreed that on Myers' failure to pay the monthly rent as it became due, the agreement should terminate and Isern would be entitled to immediate possession. Another provision of the agreement, which may become important as we proceed, reads:

"It is further agreed that this agreement and lease supersedes and takes place of all other and prior agreements, contracts and instruments heretofore entered into between the parties hereunto."

This agreement was shortly thereafter breached, and a forcible detainer action was begun which found its way into the district court and culminated on September 8, 1933, in a judgment in favor of Isern for possession and for $300 due him as rent.

From time to time, whenever Myers made default in his payments of dues, interest and installments to the loan association, Isern paid them, as he also did the later installments up to and including the 112th, which he paid on February 20, 1935. At all times Myers was aware of these facts. Indeed, it was one of Myers' contentions in this lawsuit, as it still is, that Isern had agreed to assume and pay the mortgage indebtedness to the loan company according to its terms.

About February 25, 1935, Isern signified to the loan company his desire to pay off the mortgage loan. Accordingly, the then paid-up value of the stock plus the dividends credited thereto which aggregated $2,400, together with an additional cash payment of $100 by Isern, was applied to the mortgage indebtedness, which thereby extinguished it. Whether it likewise extinguished the thirty installment shares which were brought into nominal existence at the time the loan was made as an incident thereto and which were intended to be extinguished with the mortgage indebtedness at its maturity is the gist of this lawsuit.

Plaintiff sought to hold both Isern and the loan association for $2,500 as the alleged value of the shares. The trial court held that the shares were merely incidental to the mortgage loan transaction, that when the mortgage was paid the shares were extinguished as contemplated from their inception, and gave judgment for defendants.

Plaintiff appeals, assigning errors in the trial court's findings of fact and conclusions of law.

He first complains of the trial court's refusal to find that Isern had agreed to pay the mortgage, and directs our attention to certain language in the contract of September 17, 1932, where it recites that Isern is the owner of the Lyons property subject to a first mortgage for $2,500 "which. . . was assumed and to be paid" by Isern "in accordance with the deed of conveyance of said property to him." Looking into the deed, however, there is no such assumption stated nor any language susceptible of such a construction. On the contrary, the written contemporaneous agreement of the parties, dated August 13, 1928, expressly provided that Myers, grantor of the deed, agreed "to pay all the dues, interest or installments becoming due on said mortgage according to the terms thereof." Moreover, the agreement of September 17, 1932, provided that whatever may have been the prior agreements of Myers and Isern, they were all to be superseded by the contract of that date, and it contained no such obligation on the part of Isern. From all the evidence, including the pertinent documents as well as the circumstances, the trial court concluded that the recital in the agreement of 1932 was merely a mistake, as it certainly was insofar as it stated that the deed from Myers to Isern provided that the grantee should pay the mortgage. No substantial error is made to appear on this point. (*In re Estate of Dennis*, 146 Kan. 121, 126, 68 P. 2d 1083.)

Counsel for plaintiff remind us that a grantee's agreement to assume a mortgage may be oral and wholly outside the conveyance. True, but the quoted provision of the written agreement of 1932 disposed of any such oral, extraneous agreement, if there had been one; so the point now sought to be made on the theory of an oral extraneous agreement cannot be sustained.

An insistent argument is also based on the proposition that the installment shares had an altogether independent status until the maturity of the mortgage debt, and that the exact time of such maturity never did arrive because Isern decided to pay the last few installments—apparently the 113th to 120th, inclusive—before they were due, so that, according to plaintiff's reasoning, Isern and the loan company had no right to terminate the independent existence of the shares by liquidating the mortgage indebtedness with them and their pertinent dividends.

Broadly viewed, we think there is no merit in this contention; and if we had any doubt about it, we would be shocked at the grossly inequitable consequence which plaintiff would deduce therefrom. The trial court correctly found that taking into account the $2,313.33 which Myers had owed Isern for ten years or longer, together with the interest thereon, and the dues, interest and installments which Isern had to pay to the loan company to protect himself, since Myers repeatedly breached his obligation to pay, Isern's total investment in the Lyons property was between $5,400 and $5,500—a good round sum, indeed, and apparently more than the property was worth.

Plaintiff uses hard words like "conspiracy," "collusive appropriation" and "concealment of facts," to characterize what he conceives to be the attitude of his adversaries in this lawsuit. We think those hard words are ill-advised. Plaintiff says he received no benefit from this transaction or series of transactions running over a period of ten years. No benefit? Did he not get $2,500 of the loan company's money, of which he but haltingly and irregularly repaid but a relatively small amount? Did he not receive $2,313.33 of Isern's money many years ago, and the only consideration Isern has gotten for that sum besides this lawsuit was whatever equity there was in the Lyons property above the mortgage? There is no merit in the contention that plaintiff received no benefit from his ten years' dealings with Isern, as shown by this record.

The case of *Prudential Bldg. & L. Ass'n v. Greenlee,* 141 Kan. 667,

43 P. 2d 217, is cited. We shall not take space to review that well-considered case further than to say that it is readily distinguishable from this case by its facts. It is not an authority on which plaintiff's present effort to obtain $2,500 of defendants' moneys can be successfully predicated.

The trouble to which Isern has been put in this lawsuit grows out of the fact that when the Lyons property was conveyed to him in 1928, the provision of the bylaws for the transfer of the installment stock was not complied with. But in 1928, when the deed and agreement were made, it was understood and intended that Myers should continue to pay the dues, interest and installments of the mortgage debt, and that Myers was to pay his indebtedness of $2,313.33 to Isern within five years, and the property was then to be reconveyed to him—which would be still several years before the mortgage indebtedness fell due. It is therefore quite easy to understand why the formality of transferring the stock to Isern was omitted. If Myers performed his agreement those shares would have to be retransferred to him. We agree with the trial court's finding No. 8 and conclusion No. 5, which, in effect, held that Isern was the equitable owner of the installment shares in February, 1935, and had a right to have them applied to the extinction of the mortgage indebtedness.

In making the loan association a party defendant and seeking a recovery against it, we cannot discern that plaintiff has even a talking point against that institution. In answer to specific inquiries and letters of Myers, the loan company wrote him as follows:

. . . . . . . . . . . . . . .

"Warren J. Myers, . . .                    . . . .    "Jan. 19, 1934.

"We have your letter of the 17th inquiring as to the manner of settlement of mortgages under certain conditions which you outline.

"In the repayment of loans we require that the collateral shares be canceled and their value applied toward the payment of the debt. . .

Everett McCann, *Secretary.*"

On March 21, 1934, Myers wrote to the loan association:

"I am perfectly willing that this be paid provided he (Isern) makes full payment in cash and no attempt is made to deduct the collateral against my rights, and ownership of the stock pledged."

To this the loan association replied:

"W. J. Myers, . . . . .                          "March 27, 1934.

"We have your letter of the 21st referring to your loan account 131. We

may say in reply that payments on this loan have, to our knowledge, been made by Mr. E. D. Isern, of Ellinwood, Kansas, over quite a long period, and should he offer payment in full with a balance due under this account, we would feel obliged to accept payment, our loans being repayable at any time at balances, allowing credit for the cash value of collateral shares.

. . . . EVERETT McCANN, *Secretary.*"

The loan company's position was clearly stated, and was perfectly correct from a strictly legal standpoint. The installment stock constituted a pledge as well as an assignment, not a mortgage which needed to be foreclosed. (G. S. 1935, 17-1011, 17-1014.) It was subject to disposition under the law of pledges, if all the instruments evidencing the mortgage debt had not clearly provided for their disposition. In *Hunter v. Hamilton,* 52 Kan. 195, 34 Pac. 782, it was said:

"The remedy of the pledgee, and the disposition to be made of a pledge of commercial paper upon default or other contingency, may be regulated by the agreement of the parties, where such agreement is not fraudulent, or against statute or public policy." (Syl.)

See, also, *Bank v. Bank,* 80 Kan. 205, 101 Pac. 1005; and *Bailey v. Pierce,* 123 Kan. 359, 255 Pac. 37.

In Thornton and Blackledge on Building and Loan Associations, section 169, it is said:

"Whatever may be said with reference to a payment on his stock not being a payment on the borrower's indebtedness to the association, it is quite clear that he has a right, under his contract with the association, to have such payments applied to the extinguishment of his indebtedness, *pro tanto;* and the association, if it hold a lien on such share, has the right to make the same application. This right, of course, extends to his assignee in insolvency . . . If the stock has been pledged to the association as a collateral security for the debt, as is almost universally the case, the association has the right to apply the payments thereon as *pro tanto* payments upon the borrower's debt."

Were the loan company's position less tenable than it is, plaintiff's protracted inaction—"standing by"—following the correspondence quoted above, would subject him to the bar of equitable estoppel against it. The loan association had plainly told him that if Isern signified his desire to pay off the loan, it would feel bound to apply the shares to its extinction. Plaintiff took no effective step to prevent that contemplated and avowed course. In 21 C. J. 1152 it is said:

"Where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights and fails to assert his title or right, he will be estopped afterward to assert it."

See, also, 10 R. C. L. 692-694.

It is useless to discuss this case at further length. No error of law or miscarriage of justice is made to appear, and the judgment is therefore affirmed.